UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL D. BADGETT,

        Plaintiff,

  v.

ANDREW M. SAUL,[1] Commissioner of
 Social Security,

        Defendant.
_____

**DECISION
and
ORDER**

**18-CV-1171F**
(**consent**)

APPEARANCES:    LAW OFFICES OF KENNETH R. HILLER, PLLC
            Attorneys for Plaintiff
            KENNETH R. HILLER, and
            AMY C. CHAMBERS, of Counsel
            6000 North Bailey Avenue
            Suite 1A
            Amherst, New York  14226
                and
            LEWIS L. SCHWARTZ, PLLC
            Attorneys for Plaintiff
            LEWIS L. SCHWARTZ, of Counsel
            1231 Delaware Avenue
            Suite 103
            Buffalo, New York  14209


            JAMES P. KENNEDY, JR.
            UNITED STATES ATTORNEY
            Attorney for Defendant
            Federal Centre
            138 Delaware Avenue
            Buffalo, New York  14202
                and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

>MONIKA CRAWFORD
>Special Assistant United States Attorney, of Counsel
>Social Security Administration
>Office of General Counsel
>26 Federal Plaza
>Room 3904
>New York, New York  10278
>>and
>
>RICHARD W. PRUETT, and
>LAURA RIDGELL BOLTZ
>Special Assistant United States Attorney, of Counsel
>Social Security Administration
>Office of General Counsel
>1961 Stout Street
>Suite 4169
>Denver, Colorado  80294

## JURISDICTION

On October 7, 2019, the parties to this action, in accordance with a Standing Order, consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 20, 2019 (Dkt. 10), and by Defendant on July 18, 2019 (Dkt. 13).

## BACKGROUND

Plaintiff Michael D. Badgett ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on February 2, 2016, for Supplemental Security Income benefits ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges he became disabled on December 18, 2015, based on

2

diabetes, neuropathy, vision problems, anxiety, and PTSD. AR[2] at 177, 189, 193. Plaintiff's application initially was denied on May 17, 2016, AR at 72-86, and at Plaintiff's timely request, an administrative hearing was held on May 17, 2018, in Buffalo, New York via video conference before administrative law judge Theodore Kim ("the ALJ), located in Falls Church, Virginia. AR at 53-71. Appearing and testifying at the hearing were Plaintiff, represented by his attorney Lewis L. Schwartz, Esq., and vocational expert Aimee L. Spinelli ("V.E.").

On June 14, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 12-33 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council, AR at 175-76. On October 12, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On October 24, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On May 20, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum"). On July 18, 2019, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings Pursuant to Local Standing Order on Social Security Cases (Dkt. 13-1) ("Defendant's Memorandum"). Filed on August 8, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for

---

[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on March 20, 2019. (Dkt. 8).

Judgment on the Pleadings (Dkt. 14) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[3]

Plaintiff Michael D. Badgett ("Plaintiff" or "Badgett"), born July 28, 1962, was 53 years old as of December 18, 2015, his alleged disability onset date ("DOD"), and 55 years old as of June 14, 2018, the date of the ALJ's decision.  AR at 29, 59, 177, 189.  Plaintiff graduated high school where he attended regular classes, but did not pursue further education or vocational training.  AR at 59-60, 194.  Plaintiff last worked on April 30, 2004, after which Plaintiff was unable to return to work because of a death in his family, in particular, his son was murdered.  AR at 63, 193.  Prior to ceasing work, Plaintiff held jobs in housekeeping/custodial, as a warehouse worker, and as a house painter.  AR at 194, 200-06.

Plaintiff lives by himself in an apartment in Buffalo, New York, AR at 209, and indicated on his disability benefits application that he is able to tend to his personal needs including grooming and preparing simple meals, AR at 209-11, and performs chores around his home such as wiping off tables, making his bed, doing dishes, mopping the floor which requires Plaintiff move furniture to clean behind, and doing laundry.  AR at 211-12.  At his administrative hearing, however, Plaintiff testified he lived with his "Godsister" who performed such chores, with Plaintiff only occasionally taking out the trash.  AR at 60, 64-65.  Plaintiff does not drive, but relies on public

---
[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

transportation or rides from family members, and gets out about twice a week, and once a month to shop in stores for food, clothing, cleaning supplies and toiletries. AR at 212. Plaintiff spends his days meditating, drawing, watching television, and listening to music. AR at 215.

On March 20, 2006, Plaintiff was injured in an automobile accident, following which Plaintiff had neck and low back pain for which Plaintiff was examined on November 17, 2009, by orthopedic surgeon William Capicotto, M.D. ("Dr. Capicotto"). For his diabetes mellitus, Plaintiff treated with Michael D. Slater, D.O. ("Dr. Slater"), who also diagnosed Plaintiff with benign hypertension, neuropathy, and obesity. AR at 282-334, 347-58, 382-85. In connection with his disability benefits application, on April 29, 2016, Plaintiff underwent a consultative internal medicine examination by Hongbiao Liu, M.D. ("Dr. Liu"), AR at 341-45, and a lumbosacral spine X-ray on May 4, 2016. AR at 345.

Following the administrative hearing, the ALJ found Plaintiff had the RFC to perform light work, with additional restrictions, through July 27, 2017, but on July 28, 2017, upon turning 55 and reaching advanced age under the relevant regulations, that same RFC required a finding of disabled and awarded Plaintiff disability benefits as of that date, but not as of Plaintiff's asserted DOD of December 15, 2015.

## **DISCUSSION**

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

5

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2.  Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether,

given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 18, 2015, his alleged DOD, AR at 18, and suffers from the severe impairments of obesity, diabetes mellitus with neuropathy, major depressive disorder recurrent, moderate, anxiety, and adjustment disorder with depression and anxiety, chronic, AR at 18, but that Plaintiff's other medically determinable impairments, including hypertension, history of fractures and chronic back and neck pain, vision problems, and hyperlipidemia, do not more than minimally limit Plaintiff's ability to engage in basic work activities for at lease 12 months and thus are not severe impairments, AR at 19, that there is no diagnosis in the administrative record supporting Plaintiff's asserted post-traumatic stress disorder ("PTSD"), such that PTSD is not a medically determinable impairment, *id.*, and that Plaintiff's "rule-out" diagnosis for panic disorder and anxiety not otherwise specified ("NOS") is not a definitive diagnosis, yet the ALJ considered such rule-out diagnosis in the context of the Plaintiff's anxiety. *Id.* The ALJ further found Plaintiff has not, since his alleged DOD, had an impairment or combination of impairments meeting or medically equal to any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *id.* at 19-21, and that Plaintiff retains the RFC

to perform light work as defined in 20 C.F.R. § 416.967(b), except Plaintiff must be allowed to stand up to five minutes after sitting for 30 minutes, and to sit for five minutes after standing up to 30 minutes, while remaining on task, Plaintiff can occasionally push or pull or operate foot controls with both lower extremities, can frequently operate hand controls, reach, handle, finger, and feel with both upper extremities, occasionally kneel, crouch, stoop, balance, and crawl, occasionally climb stairs and ramps, never climb ladders, ropes or scaffolds, and can never be exposed to unprotected heights and moving mechanical parts, but can tolerate occasional exposure to vibration, is able to understand, carry out, and remember simple instruction and make simple work-related decisions, can frequently deal with supervisors, co-workers, and the public, can occasionally deal with changes in a routine work setting, and would be off-task 10% of the workday. AR at 21-27. The ALJ further found that because it had been more than 15 years since Plaintiff last had substantial gainful activity, Plaintiff has no past relevant work rendering irrelevant consideration of transferability of skills, and that Plaintiff, upon applying for disability benefits at age 53, was considered to be closely approaching advanced age, but since turning 55 on July 28, 2017, is of advanced age, has a high school education and is able to communicate in English, and given Plaintiff's RFC, jobs exist in the national economy that Plaintiff could perform including mail room clerk, office helper, and routing clerk. AR at 27-28. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act through July 27, 2017, but that on July 28, 2017, when Plaintiff's age category changed from closely approaching advanced age to advanced age, no jobs existed in the national economy that Plaintiff

could perform, and a finding of disabled was reached by application of Medical-Vocational Rule 202.04, 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grids"). *Id.* at 29.

In support of his motion, Plaintiff argues the ALJ failed to adequately explain at step two of the five-step analysis how evidence of Plaintiff's physical impairments did not establish such impairments are severe, resulting in error at subsequent stages of the analysis, Plaintiff's Memorandum at 14-21, the ALJ improperly evaluated opinions of consultative examiner Dr. Liu, and orthopedist Dr. Capicotto, *id.* at 21-26, and erroneously found Plaintiff capable of light work given limitations more restrictive than those considered by the ALJ including with regard to lifting, reaching, walking, sitting, and standing, as well as Plaintiff's need to elevate his legs and time to be off-task. *Id.* at 26-29. In opposition, Defendant argues the ALJ's assessments at steps two and three were supported by substantial evidence in the record, Defendant's Memorandum at 11-13, the ALJ reasonably assessed the opinions of both Drs. Liu and Capicotto, *id.* at 13-15, and there is no support in the record for the additional limitations suggested by Plaintiff. *Id.* at 15-18. In reply, Plaintiff maintains the ALJ made conclusory findings as to the severity of Plaintiff's asserted disabling conditions which findings are not supported by evidence. Plaintiff's Reply at 2-8. Plaintiff's arguments are without merit.

Preliminarily, the court observes that Plaintiff's argument does not challenge the ALJ's assessment of Plaintiff's mental RFC, but only his physical RFC, because given Plaintiff's age as of his DOD, *i.e.*, 53, which is defined as an individual approaching advanced age, 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.00(g) (defining individuals age 50-54 as "individuals approaching advanced age"), high school education, lack of PRW, and no work skills, had the ALJ found Plaintiff capable of only "sedentary," as

opposed to "light" work,[5] under the SSA's Medical Vocational Guidelines or "Grids", 20 C.F.R. Part 404, Subpt. P, App. 2, Plaintiff would have been considered disabled under Grids Rule 201.12, whereas the determination that Plaintiff was capable of light work indicated a finding of not-disabled under Grids Rule 202.13. Once Plaintiff turned 55 on July 28, 2017, Plaintiff was "of advanced age," 20 C.F.R. Part 404, Subpt. P App.2 § 201.00(f), and, under Grids Rule 202.04, disabled despite an RFC for light work.

With regard to Plaintiff's argument that the ALJ erred at steps two and three by failing to consider "evidence directly related to Plaintiff's impairments of degenerative conditions of lumbar and cervical spine and neuropathy at Step Two (and subsequent sequential steps) . . . and therefore, failed to consider the combined effect(s) of Plaintiff's impairments," Plaintiff's Memorandum at 15, not only does the record establish the ALJ did consider Plaintiff's neuropathy a severe impairment (AR at 18), rendering Plaintiff's argument as to such condition moot, but the ALJ also considered all impairments through all five steps of the analysis, including Plaintiff's chronic neck and back pain which the ALJ found was not severe in the absence of any medical evidence

---

[5] Per the relevant regulations,
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> * * *
>
> Light work involves lifting no more than 20 points at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) and (b).

suggesting such condition imposed more than a minimal impact on Plaintiff's ability to perform basic work activities. AR at 18-19. This determination is supported by substantial evidence in the record, including Dr. Capicotto's November 17, 2009 examination report performed in connection with a no-fault insurance claim related to the March 20, 2006 automobile accident, finding Plaintiff with some limited range of motion of the cervical and lumbar spines, but straight leg raising was negative bilaterally, AR at 253, and discussing lumbar spine X-rays taken May 18, 2009, showed the spine in alignment, mild loss of lordosis, and disc space narrowing at L5-S1, resulting in an impression for subtle disc desiccation (most common feature of degenerative disc disease where discs begin to show signs of dehydration or losing their fluid as one ages) at L5-S1. AR at 254. For purposes of the no-fault insurance claim, Dr. Capicotto assessed Plaintiff with a moderate, permanent disability and provided Plaintiff with a list of pain management specialists. AR at 254-55. There is no other medical evidence in the record concerning Plaintiff's asserted spinal impairment other than the results of a May 4, 2016 lumbosacral spine X-ray that was unremarkable. AR at 345. Accordingly, the ALJ did not err in failing to consider Plaintiff's back impairment to be severe at step 2. Further, although Plaintiff makes a conclusory argument that the ALJ failed to sufficiently explain why Plaintiff did not meet the criteria for disability under any of the Listings, Plaintiff's Memorandum at 19, not only does Plaintiff fail to identify which Listing he maintains he meets, but a plain review of the ALJ's decision establishes the ALJ considered the Listings for all Plaintiff's impairments the ALJ found to be severe, including Listing 9.00B5 (Endocrine System – diabetes mellitus and other pancreatic disorders), Listing 11.14 (peripheral neuropathy), Listing

12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). AR at 19-21. Nor does the scant medical evidence regarding Plaintiff's back impairment, which the ALJ found was not severe, come even close to meeting the relevant Listing 1.04A pertaining to disorders of the spine which, as relevant here, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . ." Accordingly, there is no merit to Plaintiff's argument that the ALJ erred at steps two and three of the five-step analysis by failing to consider Plaintiff's neuropathy and back impairment.

Nor is there any merit to Plaintiff argument the ALJ erred in assessing the opinions of Dr. Capicotto and Dr. Liu. Plaintiff's Memorandum at 21-26. Specifically, not only was Dr. Capicotto's opinion rendered November 17, 2009, more than six years prior to Plaintiff's alleged DOD, but Dr. Capicotto only found Plaintiff with a moderate impairment and that Plaintiff should employ "safe body mechanics" in his activities of daily living including "holding objects close to the body with lifting and carrying, avoiding rotary movements with sweeping or vacuuming." AR at 255. Significantly, Dr. Capicotto did not impose any weight restrictions on Plaintiff's ability to lift and carry, yet the ALJ did limit Plaintiff to light work, for which lifting and carrying are limited to 10 lbs. frequently and 20 lbs. at most, 20 C.F.R. § 404.1567(b), and further required Plaintiff be permitted to sit for five minutes after standing for 30, and to stand for five minutes after sitting for 30, and restricted Plaintiff with regard to kneeling, crawling, crouching,

stooping, balancing, and climbing stairs and ramps, and never climbing ladders, ropes, or scaffolds. AR at 21. Accordingly, the ALJ imposed restrictions greater than those of Dr. Capicotto rendering baseless Plaintiff's argument that the ALJ assessed Plaintiff with an RFC in excess of that permitted by Dr. Capicotto.

Further, after his consultative examination of Plaintiff on April 29, 2016, Dr. Liu found Plaintiff in no acute distress, walked slowly both with and without a cane, could walk on heels and toes with moderate difficulty because of lower back pain, squat 30% because of pain, and with normal stance. AR at 342. Plaintiff needed no help changing for the examination or getting on and off the exam table, and was able to rise from a chair without difficulty. AR at 342. With regard to Plaintiff's use of a cane, Dr. Liu reported the cane was "self-purchased" and Plaintiff used the cane "only occasionally outside only to keep balance and limit the pain," and in Dr. Liu's medical opinion, "the cane is not medically necessary." AR at 342. Dr. Liu diagnosed Plaintiff with hypertension, diabetes, chronic neck and lower back pain, and anxiety and depression, assessing Plaintiff's prognosis as stable, and rendering a medical source statement that Plaintiff "has mild to moderate limitations for prolonged walking, bending, and kneeling." AR at 344. The ALJ gave "significant weight" to Dr. Liu's opinion that Plaintiff did not need the cane to ambulate, but gave only "partial weight" to Dr. Liu's assessment that Plaintiff had a mild to moderate limitation for prolonged walking, bending and kneeling because such assessment did not adequately account for the combined effects of Plaintiff's impairments, AR at 25, thereby including more restrictions in the RFC assessment than supported by Dr. Liu's opinion. Accordingly, the ALJ's consideration

of Dr. Liu's opinion was reasonable and supported by substantial evidence in the record.

Relative to Plaintiff's argument that the ALJ failed to incorporate into the hypotheticals posed to the V.E. or to consider additional limitations with regard to Plaintiff's lifting, reaching, walking, sitting, and standing, as well as Plaintiff's assertion that he needed to elevate his legs and required time off-task, Plaintiff's Memorandum at 15-17, 20, as Defendant argues, Defendant's Memorandum at 15-17, Plaintiff fails to point to, and the administrative record is devoid of, any medical evidence, such as the opinion of Dr. Liu and treatment notes of Dr. Slater, supporting such additional restrictions. Nor does Plaintiff point to any such evidence in reply but only makes conclusory assertions in support of this argument. *See* Plaintiff's Reply, *passim*. Accordingly, the ALJ cannot be faulted for failing to incorporate into a hypothetical, or to consider in assessing a claimant's RFC, limitations that are not in the administrative record. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (Plaintiff has burden of proving "a more restrictive RFC" than the ALJ assessed).

As such, the ALJ's decision was supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 13) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	March 27th, 2020
	Buffalo, New York